UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

KINGS ROAD INVESTMENTS LTD.,

               Plaintiff,                 06 Civ. 3433 (BSJ) (ECF)

            v.

GLOBAL POWER EQUIPMENT GROUP
INC.,

               Defendant.

-------------------------------------------------------x

## RULE 56.1 STATEMENT OF UNDISPUTED FACTS

        Pursuant to Rule 56.1 of the Local Rules of the United States District Court for the Southern and Eastern Districts of New York, and in conjunction with its motion for summary judgment, Plaintiff Kings Road Investments Ltd. ("Kings Road") respectfully submits the following statement of material facts as to which there is no genuine issue of fact to be tried:

        1.      On November 23, 2004, Global Power completed a $69 million private placement of 4.25% Convertible Senior Subordinated Notes (the "Notes"). (Amendment No. 1 to Form S-3 Registration Statement filed by Global Power on January 28, 2005 ("Amended Form S-3"), Kasper Aff. Ex. 1 at 4.[1])

        2.      The Notes were purchased by Kings Road ($27,000,000), Steelhead Investments Ltd. ($27,000,000), D.B. Zwirn Special Opportunities Fund, L.P. ($3,000,000), D.B. Zwirn Special Opportunities Fund, Ltd. ($6,000,000) and HCM/Z Special Opportunities LLC ($6,000,000) (collectively, the "Note Holders"). (Securities Purchase Agreement among Global Power, Kings Road and identified investors, dated November 23, 2004 (the "Securities Purchase Agreement"), Kasper Aff. Ex. 2 at attached Schedule of Buyers.)

---

[1]      The citations to "Kasper Aff." refer to the Affirmation of Gregory A. Kasper, dated July 24, 2006, submitted with the present motion for summary judgment.

3.      To effect the private placement, on November 23, 2004, Global Power entered into a Securities Purchase Agreement with Kings Road and others.  (Securities Purchase Agreement, Kasper Aff. Ex. 2.)

4.      On November 23, 2004, the Company executed a Convertible Senior Subordinated Note in the amount of $27 million in favor of Kings Road (the "Note").  (Note, Kasper Aff. Ex. 3.)

5.      The Company and the Note Holders entered into a Registration Rights Agreement.  (Registration Rights Agreement, dated November 23, 2004 ("Registration Rights Agreement"), Kasper Aff. Ex. 4.)

6.      The Note permits redemption upon the occurrence of an Event of Default. Specifically, it provides:

> Promptly after the occurrence of an Event of Default with respect to this Note or any Other Note, the Company shall deliver written notice thereof via facsimile and overnight courier (an "Event of Default Notice") to the Holder and the holders of the Other Notes. At any time after the earlier of the Holder's receipt of an Event of Default Notice and the Holder becoming aware of an Event of Default, the Required Holders may require the Company to redeem all or any portion of the Notes by delivering written notice thereof (the "Event of Default Redemption Notice") to the Company. . . .

(Note, Kasper Aff. Ex. 3 at § 4(b).)

7.      "Required Holders" is defined in the Note to mean "the holders of Notes representing at least a majority of the aggregate principal amount of the Notes then outstanding." (Note, Kasper Aff. Ex. 3 at § 30(uu).)

8.      The amount to which holders are entitled upon redemption after occurrence of an Event of Default is, at a minimum, 110% of the principal and interested converted, and is called the Event of Default Redemption Price.  (Kasper Aff. ¶ 6.)

9.      Section 2(a) of the Registration Rights Agreement provides that the Company is to file a registration statement on Form S-3 covering the resale of all shares issuable pursuant to the Note.  (Registration Rights Agreement, Kasper Aff. Ex. 4 at § 2(a).)

10.      The failure to keep this registration statement effective is an Event of Default under the Note.  (Note, Kasper Aff. Ex. 3 at § 4(a)(i).)  Specifically, pursuant to Section 4(a)(i) of the Note, it shall be an Event of Default if

> the effectiveness of the applicable Registration Statement lapses for any reason . . . or is unavailable to any holder of the Notes for sale of all of such holder's Registrable Securities (as defined in the Registration Rights Agreement) in accordance with the terms of the Registration Rights Agreement, and such lapse or unavailability continues for a period of 10 consecutive Trading Days. . . .

(Note, Kasper Aff. Ex. 3 at § 4(a)(i).)

11.      Pursuant to Section 30(iii) of the Note and the definition of the terms contained therein, "Trading Day" means days on which the common stock of Global Power was traded on the New York Stock Exchange.  (Kasper Aff. ¶ 8.)  For purpose of the periods discussed herein, that means weekdays other than holidays.  (*Id.*)

12.      On December 23, 2004, Global Power filed a Form S-3 registration statement with the Securities and Exchange Commission and filed an amended Form S-3 on January 28, 2005.  (Form S-3 Registration Statement filed by Global Power on December 23, 2004 ("Form S-3"), Kasper Aff. Ex. 5; Amended Form S-3, Kasper Aff. Ex. 1.)

13.      On March 8, 2006, Global Power filed a Current Report on Form 8-K.  A true and correct copy of that document is attached to the Kasper Affirmation at Exhibit 6.

14.      On March 9, 2006 the Company hosted a conference call.  A true and correct transcript of that call is attached to the Kasper Affirmation at Exhibit 7.

15.    On or about March 16, 2006, the Company filed Form 12b-25 in which it extended its time to file the Form 10-K until March 31, 2006.  (Form 12-b-25, Kasper Aff. Ex. 10.)

16.    The March 31, 2006 deadline was not met and, as of this date, Global Power's 2005 Annual Report on Form 10-K has not been filed.

17.    As a result of Global Power's failure to timely file its 2005 Annual Report on Form 10-K, the Company's Form S-3 registration statement ceased to be effective by, at the latest, May 1, 2006.  Ten consecutive Trading Days thereafter elapsed by May 16, 2006.

18.    In its March 30, 2006 press release, Global Power stated that "[a]s a result of this delay in filing the 2005 Form 10-K, . . . the Company will be in technical default under its outstanding convertible notes, which will result in a higher rate of interest and other penalties under the convertible notes provisions."  (Press Release, "Global Power Equipment Group Inc. Provides Update on 2005 10-K Filing and Restatement" (March 30, 2006), attached at Exhibit 99 to Global Power's Current Report on Form 8-K filed on March 14, 2006, Kasper Aff. Ex. 11 at 1.)

19.    In a Current Report on Form 8-K filed on April 6, 2006, the Company denied that certain Events of Default claimed by Note Holders had occurred, but stated that "[a]s a result of the delay in the filing of the Company's 2005 Form 10-K beyond March 31, 2006, other events of default will or may occur under the Notes and liquidated damages will accrue under the Registration Rights Agreement."  (Global Power's Current Report on Form 8-K filed on April 6, 2006, Kasper Aff. Ex. 12 at 3.)

20.    Section 2(f) of the Registration Rights Agreement provides that the

obligation to pay liquidated damages is triggered by the Company's failure to keep the required

registration statement effective.  In particular, it states:

> If . . . sales of all of the Registrable Securities required to be
> included on such Registration Statement cannot be made . . .
> pursuant to such Registration Statement (including, without
> limitation, because of a failure to keep such Registration Statement
> effective . . .) (a "**Maintenance Failure**") then, as partial relief for
> the damages to any holder by reason of any such delay in or
> reduction of its ability to sell the underlying shares of Common
> Stock (which remedy shall not be exclusive of any other remedies
> available at law or in equity), the Company shall pay to each
> holder of Registrable Securities relating to such Registration
> Statement an amount (the "**Liquidated Damages Amount**") in
> cash equal to (A) one-quarter of one percent (0.25%) of the
> aggregate Purchase Price . . . of the Notes relating to such
> Investor's Registrable Securities included in such Registration
> Statement for the first 90 day period following a . . . Maintenance
> Failure, (B) one-half of one percent (0.50%) of the aggregate
> Purchase Price of the Notes relating to such Investor's Registrable
> Securities included in such Registration Statement for the
> following 60 day period, and (C) three-quarters of one percent
> (0.75%) of the aggregate Purchase Price of the Notes relating to
> such Investor's Registrable Securities included in such Registration
> Statement for each subsequent 30 day period.  Liquidated Damages
> Amounts will accrue . . . [on] the initial day of a Maintenance
> Failure and on every thirtieth day (pro rated for periods totaling
> less than thirty days) thereafter until such Maintenance Failure is
> cured.

(Registration Rights Agreement, Kasper Aff. Ex. 4 at § 2(f).)

21.    The Note provides for a 9.25% rate of interest upon the occurrence of an

Event of Default.  In particular, the Note states:  "From and after the occurrence of an Event of

Default the Interest Rate shall be increased to 9.25%."  (Note, Kasper Aff. Ex. 3 at § 2.)

22.    On May 24, 2006, Global Power informed Kings Road, through Kings

Road's agent, that Global Power had commenced paying interest at the default rate of 9.25%

beginning after May 1, 2006.  (E-mail from Y Reed, Global Power, to "Operations" (May 24,

2006), Kasper Aff. Ex. 13.)  Global Power in fact did pay such interest at that rate beginning after that date.  (Kasper Aff. ¶ 17.)

   23. On March 31, 2006, Note Holder Steelhead Investments Ltd. sent the Company an Event of Default Redemption Notice, as that term is defined in the Note.  (*See* letter from Candice Cheeseman, Global Power, to Steelhead Investments Ltd. (Apr. 5, 2006), Kasper Aff. Ex. 14.)

   24. On April 10, 2006, Note Holders D.B. Zwirn Special Opportunities Fund, L.P., D.B. Zwirn Special Opportunities Fund, Ltd., and HCM/Z Special Opportunities LLC collectively sent the Company an Event of Default Redemption Notice.  (Letter from David A. Proshan to Global Power (Apr. 10, 2006), Kasper Aff. Ex. 15.)

   25. On April 6, 2006 Kings Road sent a notice of its intent to exercise its redemption rights to certain lenders of the Company's senior credit facility.  (Letter from Erik Caspersen, Kings Road, to Bank of America, US Bank National Association and Bank of Oklahoma (Apr. 6, 2006), Kasper Aff. Ex. 16.)

   26. On April 13, 2006 Kings Road sent an Event of Default Redemption Notice, via facsimile and overnight courier, to Global Power stating certain Events of Default had occurred and stating that it "exercises its right, pursuant to Section 4(b) of the Note, to require the Company to redeem all of the Notes."  (Letter from Brandon Jones, Kings Road, to Global Power (Apr. 13, 2006), Kasper Aff. Ex. 18.)

   27. On May 4, 2006, Kings Road sent another letter, also via facsimile and overnight courier, to the Company stating that additional Events of Default had occurred.  (Letter from Erik Caspersen, Kings Road, to Global Power (May 4, 2006), Kasper Aff. Ex. 19.)

28.    Section 13 of the Note provides that, upon sending an Event of Default

Redemption Notice,

> [T]he Holder shall promptly submit this Note to the Company.
> The Company shall deliver the applicable Event of Default
> Redemption Price . . . to the Holder within ten (10) Business Days
> after the Company's receipt of the Holder's Event of Default
> Redemption Notice. . . .

(Note, Kasper Aff. Ex. 3 at § 13(a).)

29.    On or about May 3, 2006, Kings Road submitted the Note for redemption

to Global Power, pursuant to Section 13 of the Note.  (*See* letter from Andrew W. Hammond,

White & Case LLP (counsel for Global Power) to Erik W. Caspersen, Kings Road (May 5,

2006), Kasper Aff. Ex. 20.)

30.    On May 8, 2006, Global Power returned the Note and declined to make

payment thereunder.  (Letter from Candice L. Cheeseman, Global Power, to Polygon Investment

Partners LP, manager to Kings Road (May 8, 2006), Kasper Aff. Ex. 21.)

Dated: New York, New York                         SCHULTE ROTH & ZABEL LLP
     July 24, 2006


                                              By: s/ Alan R. Glickman
                                                 Alan R. Glickman (AG-0927)
                                                 Gregory A. Kasper (GK-6596)

                                              919 Third Avenue
                                              New York, New York  10022
                                              (212) 756-2000

                                              Attorneys for Kings Road Investments Ltd.