UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

KINGS ROAD INVESTMENTS LTD.,

           Plaintiff,

           v.                                  06 Civ. 3433 (BSJ)

GLOBAL POWER EQUIPMENT GROUP INC.,

           Defendant.

------------------------------------------------------------X

## GLOBAL POWER EQUIPMENT GROUP'S RESPONSES UNDER LOCAL RULE 56.1 TO KINGS ROAD'S STATEMENT OF UNDISPUTED FACTS AND <u>COUNTER-STATEMENT OF UNDISPUTED FACTS</u>

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules of the United States District Court for the Southern and Eastern Districts of New York, Global Power Equipment Group Inc., (the "Company" or "GPEG") hereby responds to Plaintiff's Rule 56.1 Statement as follows:[1]

      1.        On November 23, 2004, Global Power completed a $69 million private placement of 4.25% Convertible Senior Subordinated Notes (the "Notes"). (Amendment No. 1 to Form S-3 Registration Statement filed by Global Power on January 28, 2005 ("Amended Form S-3"), Kasper Aff. Ex. 1 at 4.)

<u>Not Disputed</u>.

      2.        The Notes were purchased by Kings Road ($27,000,000), Steelhead Investments Ltd. ($27,000,000), D.B. Zwirn Special Opportunities Fund, L.P. ($3,000,000), D.B. Zwirn Special Opportunities Fund, Ltd. ($6,000,000) and HCM/Z Special Opportunities LLC ($6,000,000) (collectively, the "Note Holders"). (Securities Purchase Agreement among Global Power, Kings Road and identified investors, dated November 23,

---

[1] As outlined in GPEG's Memorandum of Law, GPEG submits that Plaintiff's motion for summary judgment is premature at this time and that discovery is necessary in this matter. The affirmation of Andrew W. Hammond, Esq. dated August 21, 2006, submitted in connection with GPEG's opposition papers outlines the necessary and required discovery that should go forward in this matter.

2004 (the "Securities Purchase Agreement"), Kasper Aff. Ex. 2 at attached Schedule of Buyers.)

Not Disputed.

     3.     To effect the private placement, on November 23, 2004, Global Power entered into a Securities Purchase Agreement with Kings Road and others. (Securities Purchase Agreement, Kasper Aff. Ex. 2.)

Not Disputed.

     4.     On November 23, 2004, the Company executed a Convertible Senior Subordinated Note in the amount of $27 million in favor of Kings Road (the "Note"). (Note, Kasper Aff. Ex. 3.)

Not Disputed.

     5.     The Company and the Note Holders entered into a Registration Rights Agreement. (Registration Rights Agreement, dated November 23, 2004 ("Registration Rights Agreement"), Kasper Aff. Ex. 4.)

Not Disputed.

     6.     The Note permits redemption upon the occurrence of an Event of Default. Specifically, it provides:

> Promptly after the occurrence of an Event of Default with respect to this Note or any Other Note, the Company shall deliver written notice thereof via facsimile and overnight courier (an "Event of Default Notice") to the Holder and the holders of the Other Notes. At any time after the earlier of the Holder's receipt of an Event of Default Notice and the Holder becoming aware of an Event of Default, the Required Holders may require the Company to redeem all or any portion of the Notes by delivering written notice thereof (the "Event of Default Redemption Notice") to the Company....

(Note, Kasper Aff. Ex. 3 at § 4(b).)

Disputed as stated. GPEG disputes the first sentence of paragraph six because, as stated, this proposition is an inference or legal conclusion and not a fact. GPEG does not dispute that the Convertible Senior Subordinated Note (the "Note") contains the referenced provision.

     7.     "Required Holders" is defined in the Note to mean "the holders of Notes representing at least a majority of the aggregate principal amount of the Notes then outstanding." (Note, Kasper Aff. Ex. 3 at § 30(uu).)

Not Disputed.

8.     The amount to which holders are entitled upon redemption after occurrence of an Event of Default is, at a minimum, 110% of the principal and interest converted, and is called the Event of Default Redemption Price. (Kasper Aff. ¶ 6.)

<u>Disputed as stated</u>. This proposition is an inference or a legal conclusion and not a fact.

9.     Section 2(a) of the Registration Rights Agreement provides that the Company is to file a registration statement on Form S-3 covering the resale of all shares issuable pursuant to the Note. (Registration Rights Agreement, Kasper Aff. Ex. 4 at § 2(a).)

<u>Disputed as stated</u>. This proposition is an inference or a legal conclusion and not a fact.

10.    The failure to keep this registration statement effective is an Event of Default under the Note. Specifically, pursuant to Section 4(a)(i) of the Note, it shall be an Event of Default if

> the effectiveness of the applicable Registration Statement lapses for any reason ... or is unavailable to any holder of the Notes for sale of all of such holder's Registrable Securities (as defined in the Registration Rights Agreement) in accordance with the terms of the Registration Rights Agreement, and such lapse or unavailability continues for a period of 10 consecutive Trading Days....

(Note, Kasper Aff. Ex. 3 at § 4(a)(i).)

<u>Disputed as stated</u>. GPEG disputes the first sentence of paragraph 10 because, as stated, this proposition is an inference or a legal conclusion and is not a fact. GPEG does not dispute that the Note contains the referenced provision.

11.    Pursuant to Section 30(iii) of the Note and the definition of the terms contained therein, "Trading Day" means days on which the common stock of Global Power was traded on the New York Stock Exchange. (Kasper Aff. ¶ 8.) For purpose of the periods discussed herein, that means weekdays other than holidays. (*Id.*)

<u>Not Disputed</u>.

12.    On December 23, 2004, Global Power filed a Form S-3 registration statement with the Securities and Exchange Commission and filed an amended Form S-3 on January 28, 2005. (Form S-3 Registration Statement filed by Global Power on December 23, 2004 ("Form S-3"), Kasper Aff. Ex. 5; Amended Form S-3, Kasper Aff. Ex. 1.)

<u>Not Disputed</u>.

13.    On March 8, 2006, Global Power filed a Current Report on Form 8-K. A true and correct copy of that document is attached to the Kasper Affirmation at Exhibit 6.

19. In a Current Report on Form 8-K filed on April 6, 2006, the Company denied that certain Events of Default claimed by Note Holders had occurred, but stated that "[a]s a result of the delay in the filing of the Company's 2005 Form 10-K beyond March 31, 2006, other events of default will or may occur under the Notes and liquidated damages will accrue under the Registration Rights Agreement." (Global Power's Current Report on Form 8-K filed on April 6, 2006, Kasper Aff. Ex. 12 at 3.)

Not Disputed.

20. Section 2(f) of the Registration Rights Agreement provides that the obligation to pay liquidated damages is triggered by the Company's failure to keep the required registration statement effective. In particular, it states:

> If... sales of all of the Registrable Securities required to be included on such Registration Statement cannot be made... pursuant to such Registration Statement (including, without limitation, because of a failure to keep such Registration Statement effective...) (a "Maintenance Failure") then, as partial relief for the damages to any holder by reason of any such delay in or reduction of its ability to sell the underlying shares of Common Stock (which remedy shall not be exclusive of any other remedies available at law or in equity), the Company shall pay to each holder of Registrable Securities relating to such Registration Statement an amount (the "Liquidated Damages Amount") in cash equal to (A) one-quarter of one percent (0.25%) of the aggregate Purchase Price... of the Notes relating to such Investor's Registrable Securities included in such Registration Statement for the first 90 day period following a... Maintenance Failure, (B) one-half of one percent (0.50%) of the aggregate Purchase Price of the Notes relating to such Investor's Registrable Securities included in such Registration Statement for the following 60 day period, and (C) three-quarters of one percent (0.75%) of the aggregate Purchase Price of the Notes relating to such Investor's Registrable Securities included in such Registration Statement for each subsequent 30 day period. Liquidated Damages Amounts will accrue... [on] the initial day of a Maintenance Failure and on every thirtieth day (pro rated for periods totaling less than thirty days) thereafter until such Maintenance Failure is cured.

(Registration Rights Agreement, Kasper Aff. Ex. 4 at § 2(f).) [2]

Disputed as stated. GPEG disputes the first sentence of paragraph 20 because, as stated, this proposition is an inference or legal conclusion and not a fact. GPEG does not dispute that the RRA contains the referenced provision.

---

[2] References to "Kasper Aff." are to the Affirmation of Gregory A. Kasper, Dated July 24, 2006 submitted in connection with Kings Road's Motion for Summary Judgment.

21. The Note provides for a 9.25% rate of interest upon the occurrence of an Event of Default. In particular, the Note states: "From and after the occurrence of an Event of Default the Interest Rate shall be increased to 9.25%." (Note, Kasper Aff. Ex. 3 at § 2.)

Disputed as stated. GPEG disputes the first sentence of paragraph 21, because as stated, this proposition is an inference or legal conclusion and not a fact. GPEG does not dispute that the Note contains the referenced provision.

22. On May 24, 2006, Global Power informed Kings Road, through Kings Road's agent, that Global Power had commenced paying interest at the default rate of 9.25% beginning after May 1, 2006. (E-mail from Y Reed, Global Power, to "Operations" (May 24, 2006), Kasper Aff. Ex. 13.) Global Power in fact did pay such interest at that rate beginning after that date. (Kasper Aff. ¶ 17.)

Not Disputed. GPEG does not dispute that it has paid the default rate of interest as of May 1, 2006, but notes that such payment was not in any way related to the alleged Event of Default that is the subject of this motion and that Kings Road does not so allege. (Pl. Mem., p.11, n.3).

23. On March 31, 2006, Note Holder Steelhead Investments Ltd. sent the Company an Event of Default Redemption Notice, as that term is defined in the Note. (*See* letter from Candice Cheeseman, Global Power, to Steelhead Investments Ltd. (Apr. 5, 2006), Kasper Aff. Ex. 14.)

Disputed. GPEG does not dispute that Steelhead Investments Ltd. sent the Company what purported to be an Event of Default Redemption Notice on March 31, 2006. However such notice did not allege an Event of Default under Section 4(a)(i) of the Note and did not reference an alleged lapse in the effectiveness of the Registration Statement under Section 2(f) of the RRA. Moreover, the proposition that the March 31 letter constituted an Event of Default Redemption Notice is an inference or legal conclusion and not a fact. GPEG further submits that the purported Event of Default Redemption Notice submitted by Steelhead was not valid because, inter alia, it failed to comply with section 14(e) of the Note which requires advance notice to the Agent. (Kasper Aff., Ex. 14).

24. On April 10, 2006, Note Holders D.B. Zwirn Special Opportunities Fund, L.P., D.B. Zwirn Special Opportunities Fund, Ltd., and HCM/Z Special Opportunities LLC collectively sent the Company an Event of Default Redemption Notice. (Letter from David A. Proshan to Global Power (Apr. 10, 2006), Kasper Aff. Ex. 15.)

Disputed. GPEG does not dispute that the referenced note holders sent the Company what purported to be an Event of Default Redemption Notice on April 10, 2006. However, such notice did not allege an Event of Default under Section 4(a)(i) of the Note and did not reference an alleged lapse in the effectiveness of the Registration Statement under Section 2(f) of the RRA. (Kasper Aff., Ex. 15). Moreover, the proposition that the April 10 letter constituted an Event of Default Redemption Notice is an inference or legal conclusion and not a fact. GPEG disputes that the notice was valid because, inter alia, it failed to comply with Section 14(e) of the Note which requires advance notice to the Agent. (Id.).

25. On April 6, 2006 Kings Road sent a notice of its intent to exercise its redemption rights to certain lenders of the Company's senior credit facility. (Letter from Erik Caspersen, Kings Road, to Bank of America, US Bank National Association and Bank of Oklahoma (Apr. 6, 2006), Kasper Aff. Ex. 16.)

Not Disputed.

26. On April 13, 2006 Kings Road sent an Event of Default Redemption Notice, via facsimile and overnight courier, to Global Power stating certain Events of Default had occurred and stating that it "exercises its right, pursuant to Section 4(b) of the Note, to require the Company to redeem all of the Notes." (Letter from Brandon Jones, Kings Road, to Global Power (Apr. 13, 2006), Kasper Aff. Ex. 18.)

Disputed. GPEG does not dispute that Kings Road sent the Company what purported to be an Event of Default Redemption Notice. However such notice was not related to an Event of Default under Section 4(a)(i) of the Note and did not reference an alleged lapse in the effectiveness of the Registration Statement under Section 2(f) of the RRA. Moreover, the proposition that the April 13 letter constituted an Event of Default Redemption Notice is an inference or legal conclusion and not a fact. GPEG disputes the effectiveness of the purported Event of Default Redemption Notice. (Kasper Aff., Ex. 18).

27. On May 4, 2006, Kings Road sent another letter, also via facsimile and overnight courier, to the Company stating that additional Events of Default had occurred. (Letter from Erik Caspersen, Kings Road, to Global Power (May 4, 2006), Kasper Aff. Ex. 19.)

Not Disputed. GPEG does not dispute that Kings Road sent a letter to the Company on May 4, 2006, but notes that this letter was sent after Kings Road submitted its Note for redemption. (Kasper Aff. ¶ 21).

28. Section 13 of the Note provides that, upon sending an Event of Default Redemption Notice,
> [T]he Holder shall promptly submit this Note to the Company. The Company shall deliver the applicable Event of Default Redemption Price... to the Holder within ten (10) Business Days after the Company's receipt of the Holder's Event of Default Redemption Notice....

(Note, Kasper Aff. Ex. 3 at § 13(a).)

Not Disputed.

29. On or about May 3, 2006, Kings Road submitted the Note for redemption to Global Power, pursuant to Section 13 of the Note. (See letter from Andrew W. Hammond, White & Case LLP (counsel for Global Power) to Erik W. Caspersen, Kings Road (May 5, 2006), Kasper Aff. Ex. 20.)

Disputed as stated. GPEG does not dispute that Kings Road submitted the Note for redemption on May 3, 2006, but disputes that such submission complied with Section 13 of the Note.

30. On May 8, 2006, Global Power returned the Note and declined to make payment thereunder. (Letter from Candice L. Cheeseman, Global Power, to Polygon Investment Partners LP, manager to Kings Road (May 8, 2006), Kasper Aff. Ex. 21.)

Not Disputed.

## COUNTER-STATEMENT OF UNDISPUTED FACTS

1. According to the "Schedule of Buyers" attached to the SPA, Kings Road purchased an aggregate principal amount of $27,000,000 of notes or 39.13%, Steelhead Investments Ltd. purchased an aggregate principal amount of $27,000,000 of notes or 39.13%, D.B. Zwirn Special Opportunities Fund, L.P. purchased an aggregate principal amount of

$3,000,000 of notes or 4.35%, D.B. Zwirn Special Opportunities Fund, Ltd. purchased an aggregate principal amount of $6,000,000 of notes or 8.7%, and HCM/Z Special Opportunities LLC purchased an aggregate principal amount of $6,000,000 of notes or 8.7%. (Bloor Aff. at Ex. A, Schedule of Buyers).[3]

2.   Section 3 of the Note governs the "Conversion of Notes." Under Section 3(a), "the Holders shall be entitled to convert any portion of the outstanding and unpaid Conversion Amount (as defined below) into fully paid and nonassessable share of Common Stock in accordance with Section 3(c), at the Conversion Rate (as defined below)." Section 3(b) defines the "Conversion Rate," and provides: "[t]he number of shares of Common Stock issuable upon conversion of any Conversion Amount pursuant to Section 3(a) shall be determined by dividing (x) such Conversion Amount by (y) the Conversion Price (the "Conversion Rate")." Section 3(b)(i) provides that the "'Conversion Amount' means the Principal to be converted, redeemed or otherwise with respect to which this determination is being made." Section 3(b)(ii) provides that the "'Conversion Price' means, as of any Conversion Date (as defined below) or other date of determination, and subject to adjustment as provided herein, $10.61." (Bloor Aff. at Ex. B, § 3).

3.   The stock of GPEG is principally traded on the New York Stock Exchange. On November 23, 2004, the closing price reported by Yahoo Finance was $8.37 per share. On March 7, 2006, GPEG's stock closed at $4.86 per share. On March 8, 2006, GPEG's stock closed at $4.85 per share. On March 9, 2006, the stock closed at $3.99 per share. By May 4, 2006, the day Kings Road first alleged an Event of Default under section 4(a)(i) of the Note, the stock had gone up to $4.61 per share, still well below the $10.61 conversion price. The most

---

[3] References to "Bloor Aff." are to the Affirmation of Martin S. Bloor, Esq. dated August 21, 2006 and submitted in support of GPEG's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.

9.  Kings Road has not converted its Note to shares of GPEG common stock. (Bloor Aff. ¶ 7).

Dated: New York, New York
August 21, 2006

Respectfully submitted,

**WHITE & CASE** LLP

By: /s/ Andrew W. Hammond
    Glenn M. Kurtz (GK-6272)
    Andrew W. Hammond (AH-0415)
    Martin S. Bloor (MB-9307)
1155 Avenue of the Americas
New York, New York 10036
(212) 819-8200

*Attorneys for Global Power Equipment Group Inc.*