UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

KINGS ROAD INVESTMENTS LTD.,

                 Plaintiff,

           v.

GLOBAL POWER EQUIPMENT GROUP INC.,

                 Defendant.

                          06 Civ. 3433 (BSJ)

------------------------------------------------------------------X

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANT'S REQUEST FOR DISCOVERY UNDER RULE 56(f) OF THE FEDERAL RULES OF CIVIL PROCEDURE

**WHITE & CASE** LLP
**1155 Avenue of the Americas**
**New York, New York 10036**
**(212) 819-8200**

# TABLE OF CONTENTS

Table of Contents ................................................................................................. i

Table of Authorities ............................................................................................ ii

Preliminary Statement ......................................................................................... 1

FACTS .................................................................................................................. 4

ARGUMENT ........................................................................................................ 7

I.  Standard of Review ..................................................................................... 7

II. The Transaction Documents Do Not Permit Kings Road to Collect
    Liquidated Damages and the Redemption Premium Where it Has Suffered
    No Damage .................................................................................................. 7

    A. Kings Road Is Not Entitled to Liquidated Damages Under the RRA ........... 8

    B. Kings Road Is Not Entitled to Redeem the Note ......................................... 10

III. The Provisions Relied Upon By Kings Road Are Ambiguous At Best, and,
     Therefore, Summary Judgment is Inappropriate ...................................... 12

IV. Kings Road Has Failed to Comply With the Contractual Requirements For
    Redemption ...........:................................................................................... 14

V. At Minimum, Discovery Is Required and the Court Should Hold Plaintiff's
   Motion for Summary Judgment in Abeyance Pursuant to Rule 56(f) and
   Permit Discovery to Proceed .................................................................... 17

CONCLUSION ................................................................................................... 21

# TABLE OF AUTHORITIES

## FEDERAL CASES

139 Fifth Avenue Corp. v. Giallelis, No. 94 Civ. 7956, 1996 WL 154108
(S.D.N.Y. April 3, 1996).................................................................10

Alternative Thinking Systems Inc. v. Simon & Schuster, Inc., 853 F. Supp. 791
(S.D.N.Y. 1994) .....................................................................14

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).......................................7

Armstrong v. Virgin Records, Ltd., 91 F. Supp. 2d 628 (S.D.N.Y. 2000) ........................19

Brenntag International Chemicals, Inc. v. Norddeutsche Landesbank GZ, No. 97
Civ. 2688, 1998 WL 542310 (S.D.N.Y. Aug. 25, 1998) .................................19

Burger King Corp. v. Horn & Hardart Co., 893 F.2d 525 (2d Cir. 1990) ........................13

Burlington Coat Factory Warehouse Corp. v. Esprit De Corp., 769 F.2d 919
(2d Cir. 1985)................................................................17

Carvel Corp. v. Diversified Manag. Group, Inc., 930 F.2d 228 (2d Cir. 1991) ................11

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ..................................16

Compagnie Financiere De Cic et de L'Union Europeenne v. Merrill Lynch,
Pierce, Fenner & Smith, Inc., 232 F.3d 153 (2d Cir. 2000)....................12, 13

Conzo v. New York, No. 05 Civ. 705, 2006 WL 1952083
(S.D.N.Y. July 12, 2006) ..................................................9,12

DIC Animation City, Inc. v. McNaught Syndicate, Inc., No. 92 Civ. 4859, 1993
WL 77377 (S.D.N.Y. Mar. 15, 1993) .....................................19

Fontana v. Republic of Argentina, 415 F.3d 238 (2d Cir. 2005).........................7

Galli v. Metz, 973 F.2d 145 (2d Cir. 1992) .........................................9

Karabu Corp. v. Pension Benefit Guaranty Corp., No. 96 Civ. 4960, 1997 WL
759462 (S.D.N.Y. Dec. 17, 1997)....................................12

Mellon Bank N.A. v. United Bank Corp., 31 F.3d 113 (2d Cir. 1994) ......................12

Municipal Capital Appreciation Partners I, L.P. v. Page, 181 F.Supp.2d 379
(S.D.N.Y. 2002)..........................................................14

Orange Improvements Partnership v. Cardo, Inc., 984 F. Supp. 85
(D. Conn. 1997) ...........................................................11

NEWYORK 5730707 v4 (2K)

Park Avenue Bank, N.A. v. Bankasi, No. 93 Civ. 1483, 1995 WL 739514
(S.D.N.Y. Dec. 13, 1995)..........................................................................................7,16

Schering Corp. v. Home Insurance Co., 712 F.2d 4 (2d Cir. 1983) ...................................16

This is Me, Inc. v. Taylor, 157 F.3d 139 (2d Cir. 1998).......................................................11

U.S. ex rel. Irvin Industrial, Inc. v. Goodyear Aerospace Corp., No. 87 Civ. 4444,
1992 WL 116363 (S.D.N.Y. May 20, 1992) ...................................................................12

### STATE CASES

Truck Rent-A-Center, Inc. v. Puritan Farms 2nd Inc., 393 N.Y.S.2d 365 (1977)..........9,12

Tunnell Publishing Company, Inc. v. Straus Communications, Inc., 565 N.Y.S.2d
572 (3d Dep't 1991)........................................................................................................12

### STATUTES

15 U.S.C. § 77h.....................................................................................................................4

15 U.S.C. § 77j(a)(3)............................................................................................................4

Fed. R. Civ. P. 56............................................................................................................7,16

NEWYORK 5730707 v4 (2K)

Defendant Global Power Equipment Group Inc. ("GPEG" or the "Company"), by and through its attorneys White & Case LLP, hereby responds to Kings Road Investment Ltd.'s ("Kings Road") Motion for Summary Judgment dated July 27, 2006.

## PRELIMINARY STATEMENT

Through this motion, Kings Road seeks to recover liquidated damages under the Registration Rights Agreement ("RRA") and redeem the $27 million Convertible Senior Subordinated Note ("Note") it entered into with GPEG on an accelerated basis due to the alleged unavailability of a registration statement that would become relevant only if Kings Road elected to convert the $27 million Note into approximately $5.4 million[1] in GPEG common stock ("Common Stock"). Kings Road's strained interpretation of the relevant contractual provisions to achieve this absurd result is simply untenable under the circumstances. Kings Road does not allege that it intends to convert the Note to Common Stock, nor could it have any conceivable reason to convert a structurally superior $27 million debt security into equity worth a fraction of that amount. Certainly, the parties did not intend to provide Kings Road with the financial windfall that it now seeks under the present circumstances. As if this were not enough, Kings Road filed the instant motion before the parties have had an opportunity to conduct any discovery. Accordingly, Kings Road's motion is substantively and procedurally defective and premature as well.

Kings Road is not entitled to summary judgment under the plain language of the transaction documents at issue in this case – the Securities Purchase Agreement ("SPA"), the Note, and the RRA (collectively the "Transaction Documents"). The registration statement was intended to permit holders to sell to the public shares of Common Stock issuable upon conversion of the Note. The liquidated damages provision in the RRA reflects that it is designed

---

[1] This is approximately the present value of the Common Stock that Kings Road would receive in the event that it elected to convert the full amount of the Note as of August 18, 2006.

1

to provide "relief for the damages to any holder by reason of any such delay in or reduction of its ability to sell the underlying shares of Common Stock." (Bloor Aff. at Ex. C, § 2(f)).[2]  Likewise, the relevant Event of Default provision in the Note is designed to provide relief where the registration statement is "unavailable to any holder of the Notes for sale of all of such holder's [Common Stock]."[3]  (Id. Ex. B, § 4(a)(i)).  Kings Road does not hold Common Stock, has not alleged that it intends to convert its Note to Common Stock and, in fact, given the differential between the Conversion Price ($10.61) and the market price of the stock ($2.11), the Court should conclude that Kings Road will not convert its Note to Common Stock.  Accordingly, Kings Road has not been delayed from selling any Common Stock.  The liquidated damages provision of the RRA and the relevant Event of Default provision in the Note were plainly not intended to apply in the present circumstances.

GPEG's interpretation of the Note and the RRA is consistent with well-established principles of contract interpretation.  Where there are two reasonable interpretations to a contract provision, one enforceable and one not, black letter law requires that the interpretation that is enforceable should govern.  Here GPEG has presented an interpretation of the relevant contractual provisions that is supported by the contractual language and consistent with the broader purpose of the Transaction Documents.  The interpretation of the Note and RRA advanced by Kings Road, on the other hand, is not.  Kings Road's interpretation would allow Kings Road to accelerate the Note and collect the Event of Default Redemption Price[4] and liquidated damages under the RRA even though it has sustained no damage and is not threatened

---

[2] References to the "Bloor Aff." are to the Affirmation of Martin S. Bloor, Esq. dated August 21, 2006, filed herewith in support of GPEG's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.
[3] The brackets in the definition replace the term Registrable Securities. "Registrable Securities" is defined in the RRA, as "the Conversion Shares issued or issuable upon conversion of the Notes...." (Bloor Aff. at Ex. C, § 1(g)). The Conversion Shares refers to the Common Stock of GPEG the note holders would obtain by converting their Notes. (Id. at Ex. A, Whereas Clause D)  Accordingly, Registrable Securities essentially refers to Common Stock.
[4] Assuming that Kings Road sought to redeem the full value of its Note, the Event of Default Redemption Price would be equal to $27 million (plus any accrued and unpaid interest) multiplied by 110% (the Event of Default Redemption Premium). (Bloor Aff., Ex. B, § 4(b)).

with any financial injury. Such an interpretation would result in a penalty that would render these provisions unenforceable. Fundamental principles of contract interpretation require that GPEG's interpretation of the relevant provisions prevail.

Even if the Court does not accept GPEG's interpretation of the Transaction Documents, summary judgment is inappropriate here because, at a minimum, there is ambiguity in the Note and the RRA as to whether Kings Road is entitled to the relief it seeks under the circumstances. Where such ambiguity exists, courts look to extrinsic evidence to determine the intent of the parties in entering into the agreement. As Kings Road has failed to present any extrinsic evidence to support its interpretation of the Transaction Documents, it has failed to carry its heavy burden on this motion for summary judgment.

In addition to these substantive deficiencies, Kings Road has also failed to follow the necessary contractual requirements to redeem the Note. Kings Road admits that the Required Holders must serve GPEG with a valid Event of Default Redemption Notice before GPEG is required to redeem the Note. As Kings Road holds less than "a majority of the aggregate principal amount" of the Notes it must show that some other holder has served a valid Event of Default Notice to satisfy this requirement. Kings Road has failed to make such a showing here. The Note further provides that "in the event that the Holder has sent an Event of Default Redemption Notice … the Holder shall promptly submit this Note to the Company." (Id. at Ex. B, § 13(a)). Here, Kings Road claims it sent the Note to the Company on May 3, 2006. (Pl. Rule 56.1 Statement, ¶ 29).[5] This was before Kings Road submitted a purported Event of Default Redemption Notice alleging a lapse of the effectiveness of the registration statement under section 4(a)(i) of the Note. Kings Road's failure to submit sufficient evidence to show

---

[5] References to "Pl. 56.1 Statement" are to Kings Road's Rule 56.1 Statement of Undisputed Facts dated July 24, 2006 and filed in connection with its Motion for Summary Judgment.

that the Required Holders have served valid Event of Default Redemption Notices and otherwise follow the contractual requirements for redemption requires that the instant motion be denied.

Finally, summary judgment is inappropriate because GPEG has not had the opportunity to conduct any discovery. This motion is premised on the theory that the registration statement covering the Common Stock that Kings Road would receive upon conversion of its Notes is no longer effective.[6] In responding to this motion, GPEG believes it is entitled to discovery concerning, inter alia, the intent of the parties in entering into the relevant contractual provisions, the negotiation history of the contracts, and to determine whether Kings Road contemplated that it would suffer any damages under the present circumstances. GPEG submits that this motion should be denied and the parties should be directed to complete all discovery contemplated in this action. Adopting such an approach will ensure that this litigation is conducted in an orderly fashion as opposed to the unconventional, piecemeal approach that Kings Road[7] seeks to impose on GPEG and the Court.

## FACTS

On November 23, 2004, GPEG completed a $69 million private placement of 4.25% Convertible Senior Subordinated Notes. Of this $69 million in notes, Kings Road purchased $27,000,000 (39.13%), Steelhead Investments Ltd. purchased $27,000,000 (39.13%), D.B.

---

[6] As a technical matter, there has been no lapse in the effectiveness of GPEG's registration statement. In reality, the consequences of failing to timely file the annual report on Form 10-K is that the prospectus underlying the Company's registration statement on Form S-3 became at that time unavailable for use by any selling stockholder in connection with the resale of the shares of the Company's common stock issuable upon conversion of the Note. Section 10(a)(3) of the Securities Act provides that "when a prospectus is used more than nine months after the effective date of the registration statement, the information contained therein shall be as of a date not more than 16 months prior to such use so far as such information is known to the user of such prospectus or can be furnished by such user without unreasonable effort or expense." 15 U.S.C § 77j(a)(3). The registration statement remains effective until the SEC issues a stop order suspending the effectiveness of the registration statement. 15 U.S.C § 77h. Such is not the case here. Similarly, the SEC Division of Corporate Finance's Manual of Publicly Available Telephone Interpretations ("Telephone Manual") cited by Kings Road does not suggest otherwise. (Pl. Mem. at 15). First, the referenced provision merely suggests that if the form 10-K is not filed after the expiration of a Rule 12b-25 extension, the use of the registration statement would have to discontinue. (Id.) In any event, the Telephone Manual cautions that "the statements made by members ... are not binding due to their highly informal nature." Introduction to Telephone Manual.

[7] Kings Road has indicated that it is prepared to move for summary judgment on other alleged Events of Default if the Court does not grant this motion. Such an unconventional approach would likely result in piecemeal discovery that would impose a burden on both Parties and the Court.

4

Zwirn Special Opportunities Fund, L.P. purchased $3,000,000 (4.35%), D.B. Zwirn Special

Opportunities Fund, Ltd. purchased $6,000,000 (8.7%), and HCM/Z Special Opportunities LLC,

purchased $6,000,000 (8.7%). (Bloor Aff. ¶ 3, Ex. A). In connection with the placement, on

November 23, 2004, GPEG entered into the SPA, the Note and the RRA with Kings Road and

the other note holders. (Id. at Ex., A, B, C). Kings Road is the only note holder to have

commenced an action against GPEG.

On March 8, 2006, GPEG announced that it intended to restate its financial statements for

the fiscal year ended December 31, 2004 and its interim financial statements for 2005.

Beginning in April 2006, Kings Road sent a number of notices to GPEG alleging Events of

Default had occurred and seeking to redeem the Note, all of which GPEG disputed.[8] (Pl. 56.1

Statement, ¶¶ 26-27, 30). On May 3, 2006, Kings Road tendered its Note to GPEG for

redemption. (Id. ¶ 29). Yet it was not until May 4, 2006, the day this action was commenced,

that Kings Road sent a purported "Event of Default Redemption Notice" to GPEG alleging, inter

alia, that GPEG had breached section 2(f) of the RRA and section 4(a)(i) of the Note and sought

to redeem the Note on that basis. (Kasper Aff. at Ex. 19).[9] Kings Road has not submitted any

evidence showing that any other note holders have alleged a breach of section 4(a)(i).

Kings Road has the right to covert its Note to Common Stock at an initial conversion

price of $10.61 per share. (Bloor Aff. at Ex. B § 3(b)(iii)). On November 23, 2004, the closing

price for Common Stock reported by Yahoo Finance was $8.37 per share. (Id. at Ex. D). On

March 7, 2006, GPEG's stock closed at $4.86 per share. (Id.). GPEG's stock closed at $4.85 per

---

[8] The initial notices sent by Kings Road alleged breaches of various covenants, representations and warranties. Under section 4(a)(x) of the Note, for a breach of any of the covenants, representations or warranties contained in the Transactions Documents to be an Event of Default, such breach must be material. (Bloor Aff. at Ex. B, § 4(a)(x)). Kings Road does not move for summary judgment on the basis of these alleged breaches, because, as it admits, the issue of whether a breach is material is typically an issue of fact to be determined by the fact finder. (Pl. Mem. at 2, n.1). Rather, Kings Road moves for summary judgment on the basis of GPEG's alleged violation of section 2(f) of the RRA and section 4(a)(i) of the Note.

[9] References to "Kasper Aff." are to the Affirmation of Gregory A. Kasper, dated July 24, 2006 submitted in connection with Kings Road's Motion for Summary Judgment.

5

share on March 8, 2006, the day that it announced the restatement. (Id.) On March 9, 2006, the day after the public announcement, the stock closed at $3.99 per share. (Id.). By May 4, 2006, the day Kings Road alleged the Event of Default under section 4(a)(i), the price of Common Stock had increased to $4.61 per share, still well below the $10.61 conversion price. (Id.). The closing price for Common Stock on August 18, 2006 was $2.11. (Id.). The note holders have not exercised their right of conversion under the Note and, therefore, do not hold Common Stock. (Id. ¶ 7).

The number of shares that Kings Road would receive if it elected to convert the Note is determined by the Conversion Rate. (Bloor Aff. at Ex. B, § 3). Assuming that Kings Road converted the full value of the Note to Common Stock, the Conversion Rate would be determined by dividing the Conversion Amount ($27 million) by the Conversion Price ($10.61). (Bloor Aff. Ex. B, § 3(b)). Based on the Conversion Rate, Kings Road would be entitled to receive approximately 2,544,769 shares of Common Stock. At the present market value, the Common Stock would be worth approximately $5,369,462. In other words, before the unavailability of the registration statement would have any impact on Kings Road, Kings Road would have to elect to exchange a $27 million Note which has the benefit of creditor protections and rights, such as the right to receive interest payments (which interest payments have never been missed) and a maturity date on which the entire Note is required to be repaid in exchange for approximately $5.4 million in Common Stock which has no such protections.

Although GPEG disputes Kings Road's position concerning its entitlement to redemption of the Note, in a show of good faith, GPEG has made all of the scheduled payments required under the Transaction Documents as they have become due, and has even paid the Event of Default Rate of Interest under the Transaction Documents as of May 1, 2006. (Pl. Mem. at 11).[10]

---

[10] References to "Pl. Mem." are to the Memorandum of Law of Plaintiff Kings Road Investments Ltd. in Support of its Motion for Summary Judgment dated July 24, 2006.

While Kings Road belabors the fact that GPEG has paid the Event of Default Rate of Interest, it as much as concedes that any payment of the Event of Default Rate of Interest bears no relationship[11] to the alleged Event of Default that is the subject of the instant motion and is therefore irrelevant for present purposes. (See Pl. Mem. at 11, n.3).

## ARGUMENT

### I.    Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should only be granted where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the burden of establishing the absence of any genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). In considering the motion, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" Fontana v. Republic of Argentina, 415 F.3d 238, 241 (2d Cir. 2005) (citations omitted). Summary judgment is "strongly disfavored" where, as here, the parties have not had "an adequate opportunity for discovery." Park Ave. Bank, N.A. v. Bankasi, No. 93 Civ. 1483, 1995 WL 739514, *1 (S.D.N.Y. Dec. 13, 1995). Kings Road has plainly failed to meet its burden under this standard.

### II.    The Transaction Documents Do Not Permit Kings Road to Collect Liquidated Damages and the Redemption Premium Where It Has Suffered No Damage

Kings Road's motion is based on the sole premise that it is now entitled to collect liquidated damages under the RRA and the Event of Default Redemption Price under the Note because the effectiveness of the registration statement has allegedly lapsed[12] and has remained

---

[11] By Kings Road's own calculations, the registration statement ceased being effective on May 1, and any obligation to pay the Event of Default Rate of Interest did not occur until ten Trading Days thereafter. (Pl. Mem. at 11, n.3).
[12] The effectiveness of the registration statement allegedly lapsed due to GPEG's inability to file its financial statements on March 31, 2006. (Pl. Mem. at 8-9). GPEG was unable to file its financial statements on March 31

7

unavailable for ten consecutive trading days. (Pl. Mem. at 17). Contrary to Kings Road's

claims, the Transaction Documents should not be interpreted in such a manner.

**A.    Kings Road Is Not Entitled to Liquidated Damages Under the RRA**

Kings Road claims that it is entitled to recover liquidated damages under Section 2(f) of

the RRA. The RRA expressly states that the purpose of the liquidated damages provision is to

grant the note holders "relief for the damages to any holder by reason of any such delay in or

reduction of its ability to sell the underlying shares of Common Stock":

> If (i) a Registration Statement covering all of the Registrable Securities
> required to be covered thereby and required to be filed by the Company
> pursuant to this Agreement is (A) not filed with the SEC on or before the
> Filing Deadline (a "Filing Failure") or (B) not declared effective by the
> SEC on or before the Effectiveness Deadline (an "Effectiveness Failure")
> or (ii) on any day after the Effective Date sales of all of the Registrable
> Securities required to be included on such Registration Statement cannot
> be made (other than during an Allowable Grace Period (as defined in
> Section 3(r) pursuant to such Registration Statement (including without
> limitation, because of a failure to keep such Registration Statement
> effective, to disclose such information as is necessary for sales to be made
> pursuant to such Registration Statement or to register sufficient number of
> shares of Common Stock)(a "Maintenance Failure") then, **as partial relief**
> **for the damages to any holder by reason of any such delay in or**
> **reduction of its ability to sell the underlying shares of Common Stock**
> ... the Company shall pay to each holder of Registrable Securities
> [liquidated damages].

(Bloor Aff. at Ex. C, § 2(f)(emphasis added)).

As Kings Road has not converted its Note, it holds no Common Stock.[13] Moreover,

Kings Road presently has no financial interest to convert its Note because the Conversion Price

($10.61) is far greater than the present market value of the Common Stock ($2.11). (Bloor Aff.

at Ex. D). Given that Kings Road would receive approximately $5.4 million in Common Stock

in exchange for a $27 million debt instrument that is paying interest when due and is not in

---

because the Company's outside auditor needed additional time to complete the contemplated restatement of its
financials. Accordingly, any failure to timely file financial information was beyond GPEG's control.
[13] "Common Stock" is defined as the common stock of GPEG under the RRA. (Bloor Aff. at Ex. C, Whereas
Clause B).

payment default, it is unlikely that Kings Road will convert the Note any time soon. Accordingly, any lapse in the registration statement will not prevent Kings Road from selling Common Stock (because it does not hold any) and will not cause any financial injury to Kings Road. The express language of section 2(f) does not provide for liquidated damages in these circumstances.[14]

GPEG's interpretation of section 2(f) of the RRA is further supported by fundamental principles of contract interpretation. Under New York law, "an interpretation that gives a reasonable and effective meaning to all terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect." Galli v. Metz, 973 F.2d 145, 149 (2d Cir. 1992). See also Restatement (Second) of Contracts § 203(a); Conzo v. New York, No. 05 Civ. 705, 2006 WL 1952083, at *3 (S.D.N.Y. July 12, 2006).

As set forth above, GPEG's interpretation of the RRA is supported by the language of the RRA, and is reasonable because it would entitle Kings Road to recover damages in circumstances where it has sustained damages. On the other hand, Kings Road's interpretation of the RRA would result in an unenforceable penalty. In this regard, the unavailability of the registration statement could only impact Kings Road if it elected to convert a $27 million Note into approximately $5.4 million in Common Stock, and then to sell such stock to the public. It is plain that Kings Road is not threatened with any financial harm due to the alleged breach. If section 2(f) of the RRA provided liquidated damages to Kings Road under such circumstances, Kings Road's recovery would be "grossly disproportionate to the amount of actual damages." Truck Rent-A-Center, 393 N.Y.2d at 369. As the New York Court of Appeals explained, "[i]t is

---

[14] That GPEG disclosed to the investing public the possibility of an Event of Default occurring under the Notes or the fact that it may owe liquidated damages under the RRA is not an admission that these events had, in fact, occurred. (Cf. Pl. Mem. at 9). GPEG is required to disclose such contingent liabilities or claims. Moreover, the fact that GPEG decided to pay event of default interest as of May 1, 2006 – due to technical non-compliance is in no way dispositive on the issue of whether an event of default has occurred. Indeed, as Kings Road admits, GPEG has steadfastly maintained that no event of default has occurred with respect to the lapse of the Registration Statement and that redemption of the Notes is not appropriate. (Pl. Mem. at 12).

9

plain that a provision which requires, in the event of contractual breach, the payment of a sum of money grossly disproportionate to the amount of actual damages provides for penalty and is unenforceable." Id. Kings Road's interpretation would render section 2(f) an unconscionable penalty as the provision was not calculated to compensate Kings Road for the anticipated damages that would result in the event of a breach. 139 Fifth Avenue Corp. v. Giallelis, No. 94 Civ. 7956, 1996 WL 154108, at * 3 (S.D.N.Y. April 3, 1996) ("If the amount of liquidated damages is clearly disproportionate to the expected loss ... the provision will not be enforced.")

At the very least, the language of section 2(f) of the RRA raises a reasonable doubt as to whether it would constitute a penalty. Any doubts as to whether the liquidated damages provision in the RRA is a penalty must be resolved in GPEG's favor. 139 Fifth Avenue Corp., 1996 WL 154108, at *4 ("if there is any reasonable doubt as to whether the clause imposes a penalty, courts should construe the provision as a penalty"). As Kings Road's interpretation of Section 2(f) would render the provision unenforceable, GPEG's interpretation should prevail.

**B.**    **Kings Road Is Not Entitled to Redeem the Note**

The language in section 4(a)(i) of the Note should be interpreted in the same manner as section 2(f) of the RRA. Section 4(a)(i) of the Note provides as follows:

> The failure of the applicable Registration Statement required to be filed pursuant to the Registration Rights Agreement to be declared effective by the SEC on or prior to the date that is 60 days (or in the event the SEC determines to review the Registration Statement, 150 days) after the Effectiveness Deadline (as defined in the Registration Rights Agreement), or, while the applicable Registration Statement is required to be maintained effective pursuant to the terms of the Registration Rights Agreement, **the effectiveness of the applicable Registration Statement lapses for any reason (including without limitation the issuance of a stop order) or is unavailable to any holder of the Notes for sale of all of such holder's Registrable Securities (as defined in the Registration Rights Agreement) in accordance with the terms of the Registration Rights Agreement,** and such lapse or unavailability continues for a period of 10 consecutive Trading Days or for more than an aggregate of 30 Trading Days in any 365-day period (other than days during an Allowable Grace Period (as defined in the Registration Rights Agreement)).

10

(Bloor Aff. at Ex. B, § 4(a)(i)(emphasis added)).  If there is an Event of Default, the Required

Holders may require GPEG to redeem all or any portion of the Note on an accelerated basis at

the Event of Default Redemption Price (the Conversion Amount to be redeemed plus any

accrued and unpaid interest multiplied by 110%).  (Id. at Ex. B, §§ 4(b), 13)).

     Like section 2(f) of the RRA, the relevant language reflects that section 4(a)(i) was

designed to provide relief to the note holders where the registration statement is "unavailable to

any holder of the Notes for sale of all of such holder's Registrable Securities." (Id. at Ex. C, §

2(f)).  In other words, the parties contemplated that holders would not suffer any damages as a

result of the lapse of the registration statement unless the holders were prevented in some way

from selling their Registrable Securities.  Here, Kings Road does not presently hold any

Common Stock, has no financial interest to convert its Note to Common Stock and, as set forth

above, has not been prevented from selling any Registrable Securities.  Section 4(a)(i) should not

be interpreted to provide for an Event of Default under these circumstances.  This interpretation

of the Note is also consistent with the provisions of the  RRA (which is referenced six times in

section 4(a)(i)) which contemplate that liquidated damages are only available where the holder is

damaged by an inability to sell Common Stock.  See, e.g., This is Me, Inc. v. Taylor, 157 F.3d

139, 143 (2d Cir. 1998); Carvel Corp. v. Diversified Manag. Group, Inc., 930 F.2d 228, 233 (2d

Cir. 1991); Orange Improvements P'ship v. Cardo, Inc., 984 F. Supp. 85, 92 (D. Conn. 1997)

(holding that where parties execute multiple writings concerning the same subject matter,

contracts are viewed as a whole and interpreted together).

     Moreover, GPEG's interpretation of the Note is supported by fundamental principles of

contract interpretation.  The concept that Kings Road is only entitled to redeem the Note under

section 4(a)(i) in circumstances where it has been prevented from selling Common Stock due to

the unavailability of the registration statement is supported by the contractual language and

common sense as it would compensate Kings Road in circumstances where Kings Road sustains

damages. Kings Road's interpretation, on the other hand, would allow it to collect millions of dollars and require GPEG to redeem the outstanding principal on the Note within ten business days even though Kings Road has sustained no damages and is threatened with no financial injury. (Pl. Mem. at 12). Courts treat acceleration provisions such as section 4(b) and 13 of the Note as a liquidated damages provision. See Karabu Corp., 1997 WL 759462, at *14-15 (refusing to permit acceleration of a debt based on principals of equity); Tunnell Publishing, 565 N.Y.S.2d at 574-75 (same). Accordingly, Kings Road's interpretation would be unenforceable as it would result in an unconscionable penalty under the circumstances. See Truck Rent-A-Center, 41 N.Y.2d at 424. In these circumstances, GPEG's interpretation of the Note should prevail. Conzo, 2006 WL 1952083, at * 3 ("When a contract contains a provision subject to several interpretations, the interpretation that gives effective and lawful meaning to all the terms of the contract is preferred over one which leaves a portion of the contract meaningless or unlawful.")

### III.    The Provisions Relied Upon By Kings Road Are Ambiguous At Best and, Therefore, Summary Judgment Is Inappropriate

If this Court is unable to conclude from the Transaction Documents that the parties clearly did not intend to provide Kings Road with the financial windfall that it seeks here, the contractual language contained in section 4(a)(i) of the Note and section 2(f) of the RRA is, at a minimum, ambiguous and not susceptible to resolution on a motion for summary judgment.

In a contract dispute, summary judgment is only appropriate "if the language of the contract is wholly unambiguous." Compagnie Financiere De Cic et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 232 F.3d 153, 157 (2d Cir. 2000) (citing Mellon Bank N.A. v. United Bank Corp., 31 F.3d 113, 115 (2d Cir. 1994)); See also U.S. ex rel. Irvin Indus., Inc. v. Goodyear Aerospace Corp., No. 87 Civ. 4444, 1992 WL 116363, at * 9 (S.D.N.Y. May 20, 1992) ("Summary judgment is perforce improper unless the terms of the agreement are

'wholly unambiguous'"). As the Court explained in <u>Compagnie Financiere De Cic</u>, "[c]ontract language is ambiguous if it is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.'" 232 F.3d at 158. "Summary judgment is normally inappropriate when a contractual term is ambiguous because 'a triable issue of fact exists as to its interpretation.'" <u>Burger King Corp.</u> v. <u>Horn & Hardart Co.</u>, 893 F.2d 525, 528 (2d Cir. 1990) (citations omitted).

Section 2(f) of the RRA provides that if sale of all the Registrable Securities cannot be made under the registration statement, then as "relief for the damages to any holder by reason of any such delay in or reduction of its ability to sell the underlying shares of Common Stock" a liquidated damages amount must be paid. (Bloor Aff. at Ex. C, § 2(f)). Section 2(f) applies only where the note holders have been damaged because they are unable to sell Common Stock. As Kings Road does not hold Common Stock (and has no financial interest to convert its Note to Common Stock at this time) this language creates, at a minimum, an ambiguity concerning whether section 2(f) of the RRA was intended to provide for liquidated damages in the present circumstances.

Section 4(a)(i) of the Note is likewise ambiguous when read in light of the Note redemption provision (section 4(b)) and the RRA. As set forth above, the parties clearly indicated that section 4(a)(i) was intended to protect the holder from the circumstance where the registration statement "is unavailable to the holder for sale of all such holder's Registrable Securities." (<u>Id.</u> at Ex. B, § 4(a)(i)). As Kings Road has not been prevented from selling any Registrable Securities and has not suffered any damage as a result of the alleged lapse of the registration statement, at a minimum, reasonable persons can disagree as to whether section 4(a)(i) should be interpreted to provide for an Event of Default under the circumstances. Such a conclusion is particularly appropriate when sections 4(a)(i) and 4(b) of the Note are viewed in

13

context with the RRA. At the very least, these provisions are not sufficiently clear to permit the court to rule in favor of Kings Road on this motion for summary judgment.

Furthermore, summary judgment is inappropriate because Kings Road has not submitted any evidence relating to the intent of the parties in entering into this transaction. Where a contract is ambiguous, "the court must refer to extrinsic evidence to determine the intent of the parties." Alternative Thinking Sys. Inc. v. Simon & Schuster, Inc., 853 F. Supp. 791, 798 (S.D.N.Y. 1994); see also Mun. Capital Appreciation Partners I, L.P. v. Page, 181 F. Supp. 2d 379, 393 (S.D.N.Y. 2002). In Alternative Thinking, the court denied the motions for summary judgment because the parties failed to submit evidence as to the intent of the parties in omitting a provision from the contract. The court concluded that summary judgment was inappropriate because "a genuine issue of material fact regarding the parties' intention remains." 853 F. Supp. at 798. As Kings Road has failed to submit any evidence concerning the parties' intent with respect to the relevant provisions in the Note and the RRA, a genuine issue of material fact remains with respect to how such provisions should be interpreted and thus Kings Road's motion for summary judgment must be denied.

## IV.    Kings Road Has Failed to Comply With the Contractual Requirements For Redemption

In addition to the substantive bases for denying Kings Road's motion, Kings Road has also failed to present sufficient proof that it is entitled to redeem its Note. Specifically, Kings Road has failed to present evidence to support its claim that the Required Holders have submitted valid Event of Default Redemption Notices.

Pursuant to section 4(b) of the Note, after an Event of Default, "the Required Holders may require the Company to redeem all or any portion of the Notes by delivering written notice thereof (the "Event of Default Redemption Notice") . . . to the Company . . . ." (Bloor Aff., at Ex. B, § 4(b)). Section 30(uu) of the Note defines "Required Holders" as "the holder of Notes

14

representing at least a majority of the aggregate principal amount of the Notes then outstanding . . . ." (Id. at Ex. B, § 30(uu)).

As discussed above, Kings Road holds 39.13% of the outstanding Notes, less than a majority interest. Kings Road sent its purported Event of Default Redemption Notice alleging a lapse of the effectiveness of the registration statement on May 4, 2006. (Pl. Rule 56.1 Statement, ¶ 27). However, Kings Road has not submitted sufficient proof to show that any other holder has served a valid Event of Default Redemption Notice. Obviously, GPEG would not be required to redeem the Note if the note holders failed to serve valid Event of Default Redemption Notices. (Bloor Aff. at Ex. B, § 4(b)).

In a lame attempt to meet its burden, Kings Road has submitted a purported Event of Default Redemption Notice from D.B. Zwirn (Kasper Aff. Ex. 15), and a letter from GPEG responding to a letter from Steelhead Investments Ltd. (Kasper Aff. at Ex. 14). The Zwirn letter on its face does not comply with the requirements of section 14(e) of the Note. Section 14(e) requires that holders must give the Agent "at least 3 Business Days' prior notice of its intention to exercise its redemption rights...." (Bloor Aff. at Ex. B, § 14(e)). However, the Zwirn letter states that "pursuant to Section 14(e) of the Notes we are <u>simultaneously</u> sending notice to the Agent regarding the D.B.Z. Entities' intent to redeem their respective Notes." (Kasper Aff. at Ex. 15)(emphasis added)). Moreover, the alleged Events of Default identified in the Zwirn letter are all contingent on Zwirn demonstrating that GPEG "materially breached" a representation and/or warranty in the Transaction Documents. (Bloor Aff. at Ex. B, § 4(a)(x)). As Kings Road admits, whether a provision is materially breached is a generally a question for the trier of fact, which cannot be resolved on a motion for summary judgment. (Pl. Mem. at 2, n.1).

Similarly, Kings Road submitted a letter from GPEG responding to Steelhead's letter of March 31, 2006 in support of its claim that Steelhead served a valid Event of Default Redemption Notice. (Kasper Aff. at Ex. 14). The referenced letter reflects that Steelhead failed

15

to serve an effective Event of Default Redemption Notice because it did not comply with section 14(e) of the Note. (Id.). In addition, there is also an issue as to whether Steelhead's purported Event of Default Redemption Notice was valid because there was no indication that any breach alleged therein "would have risen to the level of materiality required to constitute an Event of Default." (Id.). Accordingly, there is a genuine issue of fact as to whether the evidence submitted by Kings Road is sufficient to demonstrate that the Required Holders submitted valid Event of Default Redemption Notices that would permit redemption of the Note.

Furthermore, the contractual requirements for redemption set forth in the Note contemplate that the holder will submit its Note to GPEG only after serving a Redemption Notice. (Bloor Aff. at Ex. B, § 12(a)). Here, Kings Road alleges that it submitted its Note for redemption on May 3, 2006. (Pl. Rule 56.1 Statement, ¶ 29). However, Kings Road did not serve a Redemption Notice concerning the alleged breach of section 4(a)(i) of the Note until May 4. Moreover, Kings Road has supplied no evidence that any of the Required Holders served a valid Redemption Notice based on an alleged breach of section 4(a)(i) (the provision that Kings Road has moved under) or any other provision. Accordingly, Kings Road has failed to demonstrate that it fulfilled the contractual requirements for redemption.

16

**V.     At Minimum, Discovery is Required and the Court Should Hold
          Plaintiff's Motion for Summary Judgment in Abeyance Pursuant to
          Rule 56(f) and Permit Discovery to Proceed**

The United States Supreme Court has explained that summary judgment should be

granted only "after adequate time for discovery...." Celotex Corp. v. Catrett, 477 U.S. 317, 322

(1986). Similarly, the Second Circuit "frequently emphasized the critical importance of

discovery in the summary judgment context." Schering Corp. v. Home Ins. Co., 712 F.2d 4, 10

(2d Cir. 1983). Indeed, summary judgment is "strongly disfavored prior to the parties having

had an adequate opportunity for discovery." Park Ave. Bank, N.A. v. Bankasi, No. 93 Civ.

1483, 1995 WL 739514, *1 (S.D.N.Y. Dec. 13, 1995).

Where a party has prematurely filed a motion for summary judgment, the court should

deny or continue the motion under Rule 56(f) of the Federal Rules of Civil Procedure. That Rule

provides:

> Should it appear from the affidavits of a party opposing the motion that
> the party cannot for reasons stated present by affidavit facts essential to
> justify the party's opposition, the court may refuse the application for
> judgment or may order a continuance to permit affidavits to be obtained
> or depositions to be taken or discovery to be had or may make such
> other order as just.

Fed. R. Civ. P. 56(f). In order to establish that a party is entitled to relief under Rule 56(f), the

party must submit an affidavit stating: (1) the nature of the uncompleted discovery, i.e., what

facts are sought and how they will be obtained, (2) how those facts are reasonably expected to

create a genuine issue of material fact; (3) what efforts the affiant has made to obtain those facts;

and (4) why those efforts were unsuccessful. See Burlington Coat Factory Warehouse Corp. v.

Esprit De Corp., 769 F.2d 919, 926 (2d Cir. 1985).

NEWYORK 5730707 v4 (2K)

To satisfy its burden under Rule 56(f), GPEG submits herewith the affirmation of Andrew W. Hammond, Esq. in response to Kings Road's motion. As outlined in the affirmation, the parties attended a conference before Magistrate Dolinger on July 10, 2006. (Hammond Aff., ¶ 3).[15] At the conference, counsel for Kings Road took the position that no discovery was necessary and that it would be immediately filing a motion for summary judgment. (Id. ¶ 4). Counsel for GPEG objected, noting that there was nothing unusual about this particular case that would warrant bypassing discovery and moving directly to a motion for summary judgment. (Id.) Magistrate Dolinger stated that he would not enter a scheduling order provided that Kings Road promptly filed a motion for summary judgment. (Id. ¶ 5). Magistrate Dolinger further stated that upon receiving the motion, GPEG could respond under Rule 56(f) and seek the discovery it believes is necessary. (Id.).

GPEG submits that in order to respond properly to the motion for summary judgment, factual development of the following issues through document discovery, interrogatories, and deposition testimony is necessary:

- Why the parties provided that section 2(f) of the RRA was intended to provide "partial relief for the damages to any holder by reason of any such delay in or reduction of its ability to sell the underlying shares of Common Stock" and what the parties intended by including such language in the RRA (Id. ¶ 8(a));

- Whether the parties intended section 4(a)(i) of the Note to provide relief to the note holders in the same circumstances that would trigger section 2(f) of the RRA for the failure to maintain the registration statement (Id. ¶ 8(b));

- Whether the parties contemplated that the provisions in the Transaction Documents relating to the maintenance of the registration statement would entitle Kings Road to

---

[15] References to the "Hammond Aff." are to the Affirmation of Andrew W. Hammond, Esq. dated August 21, 2006 submitted in support of GPEG's Opposition to Kings Road's Motion for Summary Judgment.

18

compensation in circumstances where it held no Common Stock, had no financial interest in converting its Note to Common Stock, and suffered no injury (Id. ¶ 8(c));

- Whether the parties ever anticipated the potential damages that Kings Road would sustain in the event that the effectiveness of the registration statement lapsed in various potential scenarios, including where the conversion price of the Note greatly exceeded the market price of the Common Stock and the holder had yet to convert its Note (Id. ¶ 8(d));

- The actual damages that Kings Road has sustained in connection with the alleged breach (Id. ¶ 8(e));

- Whether the purported Event of Default Redemption Notices of Zwirn and Steelhead attached to the Kasper Aff. are valid.  (Id. ¶ 8(f)).

The discovery identified above will allow GPEG to develop evidence with respect to the intentions of the parties in entering into the transaction, and to identify extrinsic evidence relating to potential ambiguities in certain of the relevant Transaction Documents.  See DIC Animation City, Inc. v. McNaught Syndicate, Inc., No. 92 Civ. 4859, 1993 WL 77377, at * 2 (S.D.N.Y. Mar. 15, 1993).  Furthermore, the requested discovery is necessary for GPEG to develop evidence to present equitable defenses to Kings Road's claims.  Courts routinely permit parties to obtain discovery of such factual issues to assert equitable defenses under Rule 56(f). See, e.g., Armstrong v. Virgin Records, Ltd., 91 F. Supp.2d 628, 644 (S.D.N.Y. 2000) (refusing to decide issues relating to equitable defenses until after the parties conducted discovery); Brenntag Int'l Chems., Inc. v. Norddeutsche Landesbank GZ, No. 97 Civ. 2688, 1998 WL 542310, at * 2 (S.D.N.Y. Aug. 25, 1998) (permitting discovery to proceed on various equitable defenses).

It is also important to note that the factual issues identified above are inextricably linked to discovery that would likely be conducted in connection with the remainder of the alleged breaches identified in Kings Road's Complaint that are not relevant to this motion.[16] For example, evidence concerning the materiality of certain alleged breaches would likely be provided by the same witnesses that would testify regarding the ambiguity of the Transaction Documents, or the damages that the parties contemplated could result due to a lapse in the effectiveness of the registration statement. Given that all of these issues are interrelated and will likely involve the same witnesses, GPEG submits that in the interest of efficiency, the instant motion should be denied outright and the parties should be directed to conduct discovery on all outstanding issues. Such an approach will not cause any hardship to Kings Road. As Kings Road concedes, GPEG has continued to make the required payments under the Transaction Documents. Accordingly, the Court should permit GPEG to conduct the discovery necessary to defend itself adequately against the allegations made in the Complaint.

---

[16] Such discovery is also necessary to determine whether the purported Event of Default Redemption Notices relied on by Kings Road to satisfy the Required Holders provision in section 30(uu) of the Note are valid.

## CONCLUSION

For the reasons set forth above, GPEG respectfully requests that Kings Road's motion for

summary judgment be denied.

Dated: New York, New York
       August 21, 2006

Respectfully submitted,


**WHITE & CASE** LLP


By:   /s/ Andrew W. Hammond
       Glenn M. Kurtz (GK-6272)
       Andrew W. Hammond (AH-0415)
       Martin S. Bloor  (MB-9307)
1155 Avenue of the Americas
New York, New York  10036
(212) 819-8200

*Attorneys for Global Power Equipment Group
Inc.*

21